# United States Court of Appeals for the Federal Circuit

---

IN RE GOOGLE LLC,

*Petitioner.*

---

On Petition for a Writ of Mandamus to the
United States District Court for the Western District of Texas,
Case No. 6:23-cv-320
Judge Alan D. Albright

---

## PETITION FOR A WRIT OF MANDAMUS

---

EVAN MANN
MUNGER, TOLLES & OLSON LLP
560 Mission Street
27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4056

GINGER D. ANDERS
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, DC 20001
Telephone: (202) 220-1100

Email:   ginger.anders@mto.com
         evan.mann@mto.com

*Counsel for Petitioner Google LLC*

February 27, 2024

# CERTIFICATE OF INTEREST

Counsel for Google certifies the following:

1. The full name of every party represented by me is:

   Google LLC

2. The names of the real parties in interest represented by me are:

   None other than Google LLC

3. All parent corporations and any publicly held companies that own 10% or more of stock in the parties represented by me are:

   Alphabet Inc.; XXVI Holdings Inc.

4. The names of all law firms and the partners or associates that appeared for the parties now represented by me before the originating court or that are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   **Quinn Emanuel Urquhart & Sullivan, LLP**: Kevin Hardy, Sean Pak, John McKee, Iman Lordgooei, Ognjen Zivojnovic

   **Mann, Tindel, Thompson**: G. Blake Thompson, J. Mark Mann

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal is:

   None.

6. Organizational Victims and Bankruptcy Cases: Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees) are not applicable because this is not a criminal or bankruptcy case. See Fed. Cir. R. 47.4(a)(6).

   N/A

DATED: February 27, 2024      By: _/s/ Ginger D. Anders_

                                           Ginger D. Anders

# TABLE OF CONTENTS

**Page**

RELIEF SOUGHT ...................................................................... 1

INTRODUCTION ...................................................................... 1

ISSUE PRESENTED ................................................................. 4

STATEMENT OF FACTS ......................................................... 4

I. Proxense Sues Google in WDTX Even Though NDCA Is the
Suit's Center of Gravity .................................................... 4

    A. The Parties ............................................................. 4

    B. The Asserted Patents ............................................. 5

    C. The Accused Functionality and the Responsible Google
    Teams ...................................................................... 6

II. Proxense Files Separate Actions Against Samsung and
Microsoft That Have Little Relevance to Google's Case ............... 12

III. The District Court Denies Google's Motion to Transfer to
NDCA ............................................................................ 13

REASONS WHY THE WRIT SHOULD ISSUE .................................. 16

I. NDCA Is More Convenient for the Vast Majority of Likely,
Willing Witnesses ........................................................... 19

II. NDCA Has a Strong Local Interest in this Case, And WDTX
Has None ...................................................................... 28

III. Sources of Proof Are More Accessible in NDCA ........................ 32

IV. The District Court's Prior Experience With Some of the
Asserted Patents Cannot Justify Retaining this Case in
WDTX ........................................................................... 35

V. The Remaining Convenience Factors Confirm That WDTX
Has No Connection to, Or Interest in, this Case. ....................... 37

VI. Taken Together, The Convenience Factors Require That this
Case Be Transferred to NDCA ............................................. 38

CONCLUSION ....................................................................... 40

# TABLE OF CONTENTS
## (Continued)

**Page**

CERTIFICATE OF COMPLIANCE ......................................................... 42

**Page(s)**

FEDERAL CASES

*In re Apple Inc.*,
2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ....................................... 34

*In re Apple Inc.*,
2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ....................... 2, 26, 29, 34

*In re Apple Inc.*,
2022 WL 1676400 (Fed. Cir. May 26, 2022) ...................................... 29

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ............................................. 16, 17, 31

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. Sept. 11, 2014) ................................... 2, 20

*In re Atlassian Corp. PLC*,
2021 WL 5292268 (Fed. Cir. Nov. 15, 2021) ................................. 3, 31

*Cheney v. U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004) ............................................................................ 16

*In re DISH Network LLC*,
2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ...................................... 38

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ............................................. 19, 21, 23

*In re Google LLC*,
2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...................................... 32

*In re Google LLC*,
2022 WL 1613192 (Fed. Cir. May 23, 2022) ................................... 3, 36

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ............................... 17, 26, 28, 35, 37, 38

*In re Hoffman-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ..................................................... 29, 31

*In re Honeywell Int'l Inc.*,
2024 WL 302397 (Fed. Cir. Jan. 26, 2024) ........................................ 39

*In re Hulu, LLC*,
2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ........................................ 21

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021)................................. 3, 19, 28, 30, 32, 33

*In re Meta Platforms, Inc.*,
2023 WL 7118786 (Fed. Cir. Oct. 30, 2023).................................. 21, 22

*In re Netflix, Inc.*,
2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ........................................ 35

*In re NetScout Sys., Inc.*,
2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)........................................ 36

*In re Pandora Media, LLC*,
2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)........................................ 39

*Proxense, LLC v. Microsoft Corp.*,
6:23-cv-319 (W.D. Tex.)............................................................ 13

*Proxense, LLC v. Samsung Electronics Co.*,
6:21-cv-210 (W.D. Tex.)............................................... 12, 35, 37

*In re Samsung Electronics Co.*,
2 F.4th 1371 (Fed. Cir. 2021)................................................ 29, 35, 39

*In re Samsung Electronics Co.*,
2023 WL 8642711 (Fed. Cir. Dec. 14, 2023) ........................................ 25

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ........................................ 23, 28, 32, 34, 38

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014) ........................................................ 2, 23

*In re Verizon Bus. Network Servs. Inc.*,
    635 F.3d 559 (Fed. Cir. 2011) .............................................................. 36

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................... 16, 17, 18

## RELIEF SOUGHT

Google LLC respectfully requests that this Court issue a writ of mandamus to the United States District Court for the Western District of Texas (WDTX) directing the district court to vacate its order denying Google's motion to transfer and directing the court to transfer the case to the United States District Court for the Northern District of California (NDCA).

## INTRODUCTION

The district court denied Google's motion to transfer this case to NDCA on grounds that are squarely foreclosed by this Court's precedent and the undisputed record evidence. The center of gravity of this case is unquestionably in NDCA, while WDTX has virtually no connection to the suit aside from the plaintiff's decision to sue there.

Plaintiff Proxense, LLC is a Delaware corporation with an address in Oregon and no ties to WDTX. Nevertheless, Proxense filed this suit in WDTX, alleging that Google's FIDO passkey, Sign-In with Google, and Google's tap-to-pay services (which this petition refers to as Google Pay) infringe certain of its patents. The accused products were primarily designed and developed in NDCA. The vast majority of Google employees

with relevant knowledge of the functionalities are located in NDCA. The sources of proof are all more readily accessible in NDCA. NDCA has a strong local interest in this action, while WDTX has none. None of the events giving rise to this suit occurred in WDTX; no relevant third-party witnesses are within WDTX's subpoena power; and Proxense has no witnesses or evidence there.

In nonetheless denying transfer, the district court committed several fundamental errors. In holding that the willing-witnesses factor was neutral, the court entirely ignored *ten* identified NDCA witnesses with relevant knowledge, contrary to *In re Apple, Inc.*, 581 F. App'x 886, 888 (Fed. Cir. Sept. 11, 2014); weighed against transfer witnesses who do *not* reside in WDTX, contrary to *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); and accorded outsized importance to a single managerial Google employee in WDTX, contrary to both the record and the principle that transfer is warranted when significantly more witnesses are in the transferee district, *In re Apple Inc.*, 2022 WL 1196768, at *2 (Fed. Cir. Apr. 22, 2022). In holding that the local-interest factor was neutral despite the fact that the accused functionalities were primarily designed and developed in NDCA—and not at all in WDTX—

the court ignored this Court's direction that ongoing work on accused products in the transferor district cannot counterbalance *original development* in the transferee district. *In re Atlassian Corp. PLC*, 2021 WL 5292268, at *3 (Fed. Cir. Nov. 15, 2021). And in holding that the sources-of-proof factor was neutral, the court relied solely on the fact that Google's documents are maintained electronically, contrary to *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021).

Each of these factors weighs strongly in favor of transfer under this Court's well-settled precedents. The remaining convenience factors are neutral, as the district court held—which confirms that NDCA is the far more convenient venue. The sole consideration weighing against transfer is that the district court has some familiarity with two of the six asserted patents from a prior suit challenging different products. But this Court has held that judicial economy cannot justify denying transfer when the convenience factors weigh in favor of transfer. *In re Google LLC*, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022). In denying transfer in these circumstances, the district court clearly abused its discretion. Mandamus is warranted.

**ISSUE PRESENTED**

Whether the district court clearly abused its discretion in refusing to transfer this case to NDCA.

**STATEMENT OF FACTS**

## I. Proxense Sues Google in WDTX Even Though NDCA Is the Suit's Center of Gravity

In May 2023, Proxense sued Google in WDTX, alleging that Google infringes six Proxense patents by making, using, and selling its Fast Identity Online (FIDO) passkeys, Sign-In with Google, and Google Pay services. Appx032-057.

This case belongs in NDCA. Neither party is based in WDTX. The design and development of the accused functionalities primarily took place in NDCA. And nearly all of Google's likely witnesses are located in, and its sources of proof are more accessible from, NDCA.

### A. The Parties

Google is headquartered in Mountain View, California, which is in NDCA. Appx154; Appx179. The vast majority of employees (over 100) who work on the accused functionalities are located in NDCA, including at least ten employees who are particularly knowledgeable and likely to be witnesses in this case. While three Google employees who do work

related to FIDO passkeys are located in WDTX, none was involved in the development of that functionality, and only one has potentially relevant information.

Proxense, LLC is a Delaware corporation with a place of business in Bend, Oregon. Appx020. Proxense has no employees or offices in WDTX, nor any other apparent connection there. Appx152. Proxense's principal—John Giobbi, who is a named inventor on three of the asserted patents—is also located in Bend, Oregon. Appx154.

## B. The Asserted Patents

Proxense asserts six patents from two families. U.S. Patent Nos. 8,352,730; 8,886,954; and 9,298,905 disclose purported inventions by Mr. Giobbi, and they claim priority to the same original application. They describe and claim methods for using biometrics and personal digital keys to authenticate a user attempting to access a resource. Appx078. U.S. Patent Nos. 8,646,042; 9,679,289; and 10,073,960 disclose purported inventions by David Brown, and they share a specification. Generally, they describe and claim a "hybrid device" containing a personal digital key and a receiver-decoder circuit. Appx094. Mr. Brown lives in Chattanooga, Tennessee. Appx226.

## C. The Accused Functionality and the Responsible Google Teams

1. Proxense accuses three different Google services of infringement: FIDO passkeys, Sign-In with Google,[1] and Google Pay. Broadly speaking, passkeys are an alternative to passwords and provide users a means of signing into apps or services using, e.g., biometrics. Sign-In with Google allows users to sign into third-party websites using a Google account. Both FIDO passkeys and Sign-In with Google are aspects of Google Identity Services (GIS). Appx148. Google Pay is a separate service that, among other things, allows users to complete a credit or debit transaction by tapping their Android phone on a compatible point-of-sale terminal.

Because the accused functionalities implicate multiple Google teams, a description of the technology is necessary to understand the universe of likely witnesses in this case.

2. *Google Identity Services – FIDO Passkeys and Sign-In with Google.* Proxense's allegations regarding GIS rely on components that

---

[1] Proxense refers to the accused technology as Google's "universal passwordless architecture," Appx210, but that term is Proxense's, not Google's. Google understands that Proxense is accusing FIDO passkeys and Sign-In with Google.

communicate over a network in order to authenticate a user and grant access to a resource. For example, Proxense describes as infringing a scenario where a user attempts to access a third-party application on her computer (such as a website) and uses her Android phone to authenticate her identity. Appx038. According to Proxense, upon attempting to access the protected application, the web browser on the user's computer is redirected to Google's servers, which serve as authentication authorities. Appx040. The server may then communicate with the user's Android phone, sending a challenge to the user to authenticate herself with that device. Appx042. Using her phone, the user may verify her identity using biometrics, Appx043, and a signed response to the challenge is returned to the authentication server, Appx044-045. The authentication server then verifies that the signed challenge is legitimate. Appx046-047. If it is, the server sends a code to the user's computer, which it forwards to the third-party application to obtain access. Appx050-051.

Proxense's infringement allegations regarding this distributed authentication system implicate many Google teams:

- The server-side functionality for Sign-In with Google is supported by the OAuth Platform team. Appx149-150. That team is primarily based in NDCA. Relevant members are:

- o Roshni Chandrashekhar, NDCA, is the team leader. Appx149-150.

  - o Nick Watson, NDCA, is particularly knowledgeable regarding the server-side implementation. Appx149-150.

- The client-side functionality—i.e., the FIDO client on the user's Android device—is supported by the Client Side Identity (CSI) team. Appx149. The CSI team is primarily located in NDCA. Appx149. There are two engineering leads for the CSI team:

  - o Ali Naddaf, NDCA, has primary responsibility for managing the technical aspects of the team's work. He is particularly knowledgeable of the client-side functionality of FIDO passkeys and Sign-In with Google. Appx149.

  - o Nik Bhattacharya, WDTX, has a managerial role. He joined Google in March 2021, after the relevant functionality for FIDO passkeys and Sign-In with Google had already been developed. Appx148-149.

- Integration with the Chrome web browser is handled by the Chrome WebAuthn team. Appx150. That team has members in California and Canada. Appx150.

  - o Adam Langley, CDCA, leads that team. Appx150.

- The front end for FIDO passkeys and Sign-In with Google on Android—which serves as an interface for the FIDO client—is Google's Credential Manager API, supported by the Credential Manager team. That team is primarily located in NDCA. Appx150.

  - o Lee Campbell, NDCA, leads that team. He is particularly knowledgeable about the relevant functionality. Appx150.

- FIDO passkeys and Sign-In with Google are also supported by product managers, who develop product requirements and roadmaps. Appx150.

  - o Christiaan Brand, NDCA, is the Product Manager for FIDO passkeys. Appx150.

- o Gina Biernacki, NDCA, is the Product Manager for Sign-In with Google. Appx150.

Thus, at least *six* identified employees with extensive knowledge of FIDO passkeys or Sign-In with Google are located in NDCA.[2] Only Mr. Bhattacharya is in WDTX, and he has a managerial role.

Two other Google employees connected to FIDO passkeys or Sign-In with Google are located in WDTX—but neither has knowledge relevant to this case. Court Morgan[3] writes customer-facing documentation for FIDO passkeys; she has no involvement in developing FIDO passkey or Sign-In with Google functionality. Appx150-151. In addition, a new hire joined the CSI team after Proxense filed the Complaint. Appx149. When Google filed its motion to transfer, the new hire was still in training and had no experience with the accused functionality. Appx149.

3. *Google Pay.* Proxense's infringement allegations concerning Google Pay similarly implicate multiple components in a network.

---

[2] Google identified two additional teams responsible for the server-side functionality for authenticating Google accounts, which interacts with the accused functionality. Appx381. Those teams are led by Manu Sinha and Jayini Trivedi, who are both located in NDCA. Appx382.

[3] Court Morgan recently changed her name from Court Jacinic. Appx369. Both names appear in the record.

Proxense alleges that infringement occurs when a user unlocks her Android phone using biometrics to complete a tap-to-pay transaction. Appx052-056. According to Proxense, in such a transaction, the phone sends a token to the payment terminal, the terminal forwards the token to a third-party service provider, and the service provider sends a transaction request to a financial institution that authorizes the transaction. Appx052-056.

Proxense's allegations regarding Google Pay implicate the work of the Google Wallet Payments team, which is primarily based in NDCA and has no members in WDTX. Appx145-146. The *four* individuals with the most relevant knowledge are all located in NDCA. Appx146. The Technical Lead Manager for that team is Peter Gwinn. Appx145. Mr. Gwinn is particularly knowledgeable about the accused tap-to-pay functionality and its development, having worked on the accused functionality and earlier iterations. Appx145. Other likely witnesses are Justin Brickell, who helped develop the client-side functionality, and Alex Chovanec, who has knowledge of the server-side functionality. Appx146. Nick Hays is the Group Product Manager for the tap-to-pay functionality. Appx146.

No one at Google who works on the accused tap-to-pay functionality is in WDTX.  Appx146-147.  Elliot Kramer on the Google Wallet Transit team is located in NDTX.  Appx147.  The Transit team works on using Google Pay with mass transit systems.  Appx147.  Nearly all Transit team members are in NDCA.  Appx147.  Proxense does not accuse any transit-specific use of Google Pay.  Any tap-to-pay functionality used by the Transit team is primarily developed by Mr. Gwinn's team in NDCA.  Appx147.

In total, Google identified at least *ten* NDCA employees who were particularly knowledgeable about the accused functionalities and would likely serve as witnesses at trial:  Peter Gwinn, Justin Brickell, Alex Chovanec, Nick Hays, Ali Naddaf, Roshni Chandrashekhar, Nick Watson, Lee Campbell, Christiaan Brand, and Gina Biernacki.  Appx130-132.  While there are three employees in WDTX—Mr. Bhattacharya, Ms. Morgan, and the new hire—only Mr. Bhattacharya arguably possesses relevant knowledge.

4.  Google's documents and source code are created and maintained by the employees working on the relevant products and services.  Appx147; Appx151.  Accordingly, documents and source code relevant to

the accused services are primarily created and maintained in NDCA, where those services are developed. Appx147; Appx151. Google also maintains physical test terminals in NDCA used for product development. Appx147.

5. Google has marketing personnel for each accused service. When the suit was filed, Neha Megchiani managed Google's relationships with partners using its FIDO passkey technology.[4] Appx364. Ms. Megchiani is located in Illinois. Appx364. Sophia Yuan and Paula Paschoal, both NDCA, have similar responsibilities for Sign-In with Google and Google Pay, respectively. Appx364; Appx388-390.

## II. Proxense Files Separate Actions Against Samsung and Microsoft That Have Little Relevance to Google's Case

In 2021, Proxense filed suit against Samsung in WDTX. *See Proxense, LLC v. Samsung Electronics Co.*, 6:21-cv-210 (W.D. Tex.). That suit alleged that Samsung's tap-to-pay service infringed five Proxense patents, including the '730 and '905 patents asserted against Google. Samsung's product is distinct from the accused Google functionalities in this case.

---

[4] Ms. Megchiani has since changed roles.

On the same day Proxense filed suit against Google, it also filed suit against Microsoft in WDTX. *Proxense, LLC v. Microsoft Corp.*, 6:23-cv-319 (W.D. Tex.). Proxense alleges that Microsoft's Identity Platform infringes the same six patents asserted against Google. Microsoft has moved to transfer to WDWA. That motion remains pending.

## III. The District Court Denies Google's Motion to Transfer to NDCA

Because the relevant witnesses and evidence are concentrated in NDCA, Google moved to transfer venue for convenience. Appx124. Proxense opposed, arguing primarily that the district court's prior experience with some of the asserted patents disfavored transfer. Given that the clear locus of the suit is NDCA—the accused functionalities are primarily developed there, the employees with knowledge of those functionalities are overwhelmingly located there, and Proxense itself has no connection to, or witnesses or evidence in, WDTX—Proxense was forced to place great weight on Mr. Bhattacharya's and Ms. Morgan's presence in WDTX. Appx212-219. Proxense did not dispute that the many other Google witnesses located in NDCA would be greatly inconvenienced absent transfer. Appx219. Yet Proxense urged, based primarily on mischaracterizations of Mr. Bhattacharya's statements,

that Mr. Bhattacharya was the single most important witness in the case. Appx217.

On January 23, 2024, the district court denied Google's motion to transfer. The court held that one convenience factor weighed against transfer and that the remaining factors were neutral.

*Willing witnesses.* The court held that the convenience of willing witnesses was neutral. The court entirely ignored Google's ten identified witnesses with extensive material knowledge who would likely be called at trial. Appx003-007. Instead, the court focused on five individuals— Mr. Bhattacharya, Ms. Morgan, Mr. Kramer, Ms. Megchiani, and Mr. Brown—whom it asserted would find WDTX more convenient. Appx007. Three (Kramer, Megchiani, and Brown) do not reside in WDTX (and it is undisputed that Kramer will not be a witness at all). The court characterized Mr. Bhattacharya as the single "most important witness" based primarily on Bhattacharya's statement on his personal website that he leads the Google passkeys engineering team. Appx007. The court thus ignored Mr. Bhattacharya's testimony—which was consistent with his personal website—that his role is managerial rather than technical and pertains to only one of the many teams implicated.

And the court failed entirely to weigh Mr. Bhattacharya's convenience against that of the *ten* identified NDCA witnesses.

*Sources of proof.* The court held that the relative ease of access to evidence was neutral because documents created by Mr. Bhattacharya's team are stored electronically. Appx008-009. The court did not consider documents generated by the many other relevant teams, and it discounted entirely the physical evidence stored in NDCA. Appx009.

*Compulsory process.* The court held that the availability of compulsory process was neutral, as neither party identified specific witnesses who would be subject to the subpoena power of NDCA or WDTX. Appx007-008.

*Local interest.* The court held that neither NDCA or WDTX had a greater local interest in the dispute. Although the accused functionalities were developed in NDCA, the court reasoned that WDTX had a significant interest because Mr. Bhattacharya managed implementation of Google's passkeys. Mr. Bhattacharya's instructions were, however, implemented by the technical team in NDCA, and he had no involvement with Google Pay. Appx011-012.

*Judicial economy.*  The court held that judicial economy weighed against transfer, relying on its prior experience from the Samsung case that involved two of the six asserted patents.  Appx009-010.

*Court congestion and other factors.*  The court held that, because there was no evidence that Proxense competes with Google, court congestion considerations were neutral.  Appx010-011.  Finally, the court held that the factors addressing familiarity with patent law and avoidance of conflict of laws were neutral.  Appx012-013.

## REASONS WHY THE WRIT SHOULD ISSUE

Mandamus relief is available to "correct a clear abuse of discretion or usurpation of judicial power."  *In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) (citation omitted).  A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief he desires"; and (3) demonstrate that "the writ is appropriate under the circumstances."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*") (quoting *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)).  For mandamus petitions challenging a failure to transfer for convenience, this three-part test "reduces to the first factor" because an

appeal following a final judgment is not an adequate alternative and an erroneous failure to transfer may result in judicially-sanctioned, irreparable procedural injury. *See In re Apple Inc.*, 979 F.3d at 1336-37.

This Court follows regional-circuit standards governing transfer-for-convenience motions, here the Fifth Circuit. *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023). The Fifth Circuit analyzes private and public interest factors to compare the relative convenience of the venues. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (citation omitted). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (citation omitted). A case should be transferred when the movant has

shown that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*

Google has a clear and indisputable right to the writ. As a threshold matter, this case could have been brought in NDCA. Whether it should be transferred thus turns on the convenience factors, which show that NDCA is unequivocally more convenient. The willing-witness factor—the most important consideration in the transfer analysis—overwhelmingly favors transfer. The vast majority of willing witnesses are in NDCA; the only three identified individuals in WDTX are Google employees with minimal or no technical knowledge, who are unlikely to be witnesses, and who must not be given weight under this Court's precedents. Google's documents and sources of proof are overwhelmingly maintained in NDCA and are more accessible from there, while Proxense has no evidence in WDTX. Proxense has identified no witnesses within WDTX's subpoena power. NDCA has a strong local interest in this case, and WDTX has none. In fact, WDTX has no material connection to the case whatsoever: Proxense is not based in WDTX, it has no employees or witnesses there, and the events giving rise to the suit did not occur there. This is thus a clear case of forum shopping.

In nonetheless denying transfer, the district court abused its discretion by disregarding this Court's clear precedents and simply ignoring undisputed facts. Mandamus is warranted.

## I. NDCA Is More Convenient for the Vast Majority of Likely, Willing Witnesses

The district court's conclusion that the willing-witnesses factor is neutral rested on several legal conclusions that this Court has repeatedly held are erroneous and warrant mandamus. Absent those significant errors, the willing-witness factor strongly favors transfer—and it is "probably the single most important factor in [the] transfer analysis." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)).

1. First, the district court committed clear legal error in entirely ignoring ten Google witnesses who undisputedly reside in NDCA and possess relevant information.

As discussed above, Proxense accuses three distinct Google services that implicate several distinct Google teams. It is undisputed that the overwhelming majority of the team members who work on these functionalities are located in NDCA. Indeed, the district court

acknowledged that over 100 individuals from many different teams are located in NDCA.  Appx006.

From these teams, Google specifically identified ten NDCA employees who were particularly knowledgeable about the accused functionalities and would likely serve as witnesses at trial.  *See* p. 11, *supra*; Appx146; Appx149-151.  Proxense did not dispute the relevance or location of any of these witnesses.  *See* Appx219.  It would be significantly more convenient for each of them if this case were transferred to NDCA.

The district court ignored all these witnesses.  The court asserted that although Google had identified over 100 individuals in NDCA on the accused-product teams, Google had failed to suggest that any of "those employees will participate in any testimony at trial."  Appx007.  But that was simply wrong.  In fact, Google *had* identified ten individual team members who possessed particularly relevant knowledge and therefore *were* likely witnesses at trial.  The district court never mentioned them. This Court has held that a district court commits legal error when it simply fails to address identified likely witnesses.  *See In re Apple, Inc.*,

581 F. App'x 886, 888 (Fed. Cir. Sept. 11, 2014) (granting mandamus where court failed to address "other identified prospective witnesses").

Had the court acknowledged Google's ten identified likely witnesses, it would have been obligated to weigh them in favor of transfer. *In re Genentech*, 566 F.3d at 1343. The district court suggested, however, that potential witnesses would be entitled to "little weight" unless they "are indispensable or highly likely to testify in the case." Appx007. That is not the correct standard. It is error to "[r]equir[e] a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis." *See In re Hulu, LLC*, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). Google's papers identified the particular team members who would be most knowledgeable and why, thereby establishing that each had relevant and material knowledge and would be likely witnesses. No more was required at the transfer stage. *In re Genentech*, 566 F.3d at 1343.

The district court relied heavily on *In re Meta Platforms, Inc.*, 2023 WL 7118786 (Fed. Cir. Oct. 30, 2023), but that decision supports Google. There, this Court held that the district court did not abuse its discretion

where it carefully evaluated details concerning 15 identified NDCA witnesses but discounted unexplained lists of hundreds of other team members. *Id.* at *1. Against those 15 NDCA witnesses, the court weighed 22 WDTX witnesses. *Id.* at *2. Here, the court simply ignored the ten specific NDCA witnesses Google identified, instead proceeding as though Google had urged transfer based solely on the 100-person-strong NDCA teams and had not identified specific members who possess particularly relevant information. Appx007 (weighing only "the existence of various teams in the NDCA"). *In re Meta* provides no support whatsoever for disregarding identified witnesses in that way.

2. On the other side of the ledger, the district court committed several significant legal errors in weighing five witnesses against transfer.

*First*, the court erred in weighing three individuals—Neha Megchiani, a Google employee residing in Chicago, Appx005; Elliot Kramer, a Google engineer residing in NDTX, Appx147; and David Brown, a named inventor on three of the asserted patents who resides in Tennessee, Appx005—against transfer even though none is located in WDTX. This Court has repeatedly held that "[t]he comparison between

the transferor and transferee forums is not altered by the presence of other witnesses . . . in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). Although the district court elided the distinction between WDTX and NDTX, treating Mr. Kramer as someone who resides in "Texas in general," Appx004, these distinctions matter. *See*, *e.g.*, *In re TikTok, Inc.*, 85 F.4th 352, 359 (5th Cir. 2023) ("[T]he court erred by comparing Texas with California when it should have been comparing [WDTX] with [NDCA]."). The district court therefore committed legal error, and abused its discretion, in holding that these three witnesses weighed against transfer.

The district court committed further error by weighing Mr. Kramer and Ms. Megchiani against transfer when neither possesses relevant information. *See In re Genentech*, 566 F.3d at 1343 (before counting a witness's convenience in the analysis, court should assure itself of "the relevance and materiality of the information the witness may provide"). It is undisputed that Mr. Kramer lacks any relevant information. He works on Google Pay integration with mass transit systems, Appx147, but Proxense does not accuse any transit-related functionality. Indeed, Proxense has never contended that Mr. Kramer is a relevant witness.

*See* Appx217; Appx220. Similarly, Ms. Megchiani's knowledge is at best tangential. Ms. Megchiani worked in marketing, managing partnerships with third parties who use passkeys. Appx364; Appx378. The district court gave no reason why this knowledge would be relevant. Appx005. To the extent it is, similar marketing personnel for the other accused functionalities are located in NDCA. Appx364; Appx388-390.

*Second*, the district court erred in weighing against transfer the WDTX presence of Google employee Court Morgan. Ms. Morgan is responsible for the user experience ("UX") content strategy for FIDO passkeys. It is undisputed that she has no technical role, but instead creates customer-facing copy relating to Google's passkey functionalities. *See* Appx150-151; Appx379 ("[B]ut they are a UX writer, so whenever there is something to be written like about a passkey, what do you write on the user interface, they are the person that specializes in the English language."). Even assuming that Ms. Morgan's user-experience knowledge is somehow relevant to infringement, it is an abuse of discretion to favor the presence of non-technical witnesses like Ms. Morgan over the inconvenience of witnesses with material, technical knowledge who reside in the transferee district—like the ten Google

witnesses that the district court ignored.  *See In re Samsung Electronics Co.*, 2023 WL 8642711, at \*2 (Fed. Cir. Dec. 14, 2023).

In all events, the district court erred in uncritically accepting Proxense's assertion that Ms. Morgan's responsibility for writing user-experience copy would give her relevant knowledge.  Appx005.  The asserted claims are focused on authentication and identification methods that are invisible to users, and Proxense has not identified a single user-interface feature about which Ms. Morgan would have relevant information.  Proxense is therefore forced to argue that Ms. Morgan is a likely witness because she once had a speaking role at an industry conference related to FIDO passkeys—where she gave a presentation on "Google UX [*User Experience*] & Passkeys."  Appx264; Appx218.  That focus on user experience only confirms that her role has nothing to do with the likely issues in this case.

*Third*, the district court committed legal error in concluding that Mr. Bhattacharya, who resides in WDTX, "will be the most important witness" and therefore his "high relevance" weighed strongly against transfer.  Appx007.  Even accepting the court's characterization of Mr. Bhattacharya's paramount "importan[ce]" at face value, the test for

transfer is relative *convenience*, not relative *importance*. The fact remains that ten Google witnesses with relevant, material information reside in NDCA, and they would be inconvenienced by proceeding in WDTX. So even assuming that both Ms. Morgan and Mr. Bhattacharya possess relevant information, they cannot counterbalance the much greater number of NDCA witnesses. This Court has repeatedly held, in cases involving similar witness imbalances, that the willing-witnesses factor "*strongly favors* transfer where the transferee venue would be more convenient for the witnesses overall." *In re Apple Inc.*, 2022 WL 1196768, at *2 (Fed. Cir. Apr. 22, 2022) (emphasis added) (court abused its discretion in finding that factor only slightly supported transfer, given seven witnesses in transferee venue and two in transferor venue); *In re Google LLC*, 58 F.4th at 1384 ("Even if these three individuals had relevant and material information, the court found that eleven other potential witnesses reside in the Northern District. On this record, the district court should have weighed this factor firmly (not slightly) in favor of transfer.").

Regardless, the district court's conclusion that Mr. Bhattacharya would be "the most important" witness was founded on two significant

errors.  First, the court erred in discounting Mr. Bhattacharya's sworn account of his responsibilities based solely on generic statements from his personal website.  Mr. Bhattacharya's testimony established that he manages an engineering team that supports FIDO passkeys and Sign-In with Google.  Because he did not join Google until March 2021, after Google had developed the relevant functionalities, he contributed no code to them.  Appx148.  Even for ongoing work, Mr. Bhattacharya's role is managerial; other employees are responsible for designing and implementing any new functionality.  Appx149.  The district court discounted that testimony solely on the ground that Mr. Bhattacharya's personal webpage stated that he "lead[s] the FIDO Passkeys engineering team at Google." Appx259; Appx005.  But that anodyne statement is entirely consistent with Mr. Bhattacharya's testimony that he manages the team while others have more detailed technical knowledge.  Second, although the court cursorily asserted that Mr. Bhattacharya has "knowledge of the accused functionalities," Appx007, in fact he works only on *one* team of the several responsible for implementing FIDO passkeys and Sign-In with Google, and not at all on Google Pay—so he has limited knowledge of the functionality addressed by other GIS teams,

and no knowledge of Google Pay.  Other Google witnesses, all in NDCA, will have to address those topics.  Appx149 (identifying Ali Naddaf as having superior technical knowledge of FIDO passkeys and Sign-In with Google).  Thus, Mr. Bhattacharya is hardly "the most important witness." At most, he is *one* potential witness—and ten others are in NDCA.

3.   For those reasons, the district court abused its discretion in holding that the willing-witnesses factor is neutral.  The factor strongly favors transfer.  *See*, *e.g.*, *In re TikTok*, 85 F.4th at 361 ("The presence of one Texas witness cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in Texas."); *In re Google LLC*, 58 F.4th at 1384 (factor weighed "firmly" in favor of transfer where Google identified 11 witnesses in NDCA even if three employees in WDTX had material information).

## II.   NDCA Has a Strong Local Interest in this Case, And WDTX Has None

NDCA has a strong local interest in this case, and the district court abused its discretion in concluding that this factor is neutral.  The local-interest factor focuses on the connections between the venue and the events that gave rise to the relevant suit.  *See In re Juniper Networks*, 14 F.4th at 1319-20.  The location of the "research, design, and development

of the accused functionality," *In re Apple Inc.*, 2022 WL 1196768, at *3, is the most important consideration. The district where that work occurred has a strong local interest "because the cause of action calls into question the work and reputation of several individuals residing in or near that district." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *see also In re Apple Inc.*, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022).

NDCA has a strong local interest because the vast majority of the research, design, and development of the accused products occurred there. It is undisputed that the development of the accused tap-to-pay functionality on Google Pay—including prior iterations—took place primarily in the San Francisco Bay area, and no development occurred in Texas. Appx145-147. And FIDO passkeys and Sign-In with Google were designed and developed before Mr. Bhattacharya joined Google, by teams primarily located in NDCA—and no teams or personnel in WDTX. Appx148-150. That is enough to give NDCA a strong interest in deciding this action. *See In re Samsung Electronics Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021).

By contrast, WDTX has no interest in this action. Proxense has no connection to the district beyond its decision to file suit there—which clearly does not suffice to create a local interest. *In re Juniper Networks*, 14 F.4th at 1320. The district court's conclusion that WDTX has an interest in the suit therefore rested *solely* on the court's assertion that "leadership in design and implementation occurred in this district at the behest of Mr. Bhattacharya."[5] Appx012. But because it is undisputed that Mr. Bhattacharya did not join Google until well after the accused functionalities had been developed and launched, Appx148-150, Appx377, Mr. Bhattacharya's ongoing work is limited to assigning update projects involving two of the accused functionalities to team

---

[5] The district court's conclusion that significant development work occurred in WDTX "at the behest of Mr. Bhattacharya" appears to have been based solely on Proxense's mischaracterization of a snippet of Mr. Bhattacharya's deposition testimony, in which he stated that the term "passkey" did not exist until after he joined Google. Appx012. But Mr. Bhattacharya was not asserting that the passkey functionality was not developed until after he arrived; he was explaining that the term passkey was not coined (by Apple, not him) until after he arrived. Appx377. Regardless of that error, however, Mr. Bhattacharya's ongoing work cannot give rise to a local interest in WDTX for the reasons stated in the text.

members in NDCA. Those team members implement the updates *in NDCA*.

Mr. Bhattacharya's managerial work—on one of many teams relevant to only a subset of the accused products—from WDTX cannot render the local-interest factor neutral. This Court has held that when an accused product is designed and developed in the transferee district, it is an abuse of discretion to treat the local-interest factor as neutral merely because some ongoing work occurs in the transferor district. *In re Atlassian Corp.*, 2021 WL 5292268, at *3; *In re Apple Inc.*, 979 F.3d at 1345-46. Even where some employees within the transferor district work on the product after it has been developed, "that does not create the same 'significant connections between' the Western District of Texas and 'the events that gave rise to [this] suit.'" *In re Atlassian Corp.*, 2021 WL 5292268, at *3 (citation omitted).[6] The district court therefore abused its discretion in treating the local-interest factor as neutral.

_____

[6] The district court correctly rejected Proxense's argument that Google's relationships with third-party banks and credit card companies give WDTX an interest. Proxense never suggested that those relationships give rise to the necessary interest *in the events giving rise to the suit*. *See* Appx222; Appx012. Moreover, that banks nationwide, including in WDTX, support Google Pay does not give rise to a local interest. Appx298; *cf. In re Hoffman-La Roche*, 587 F.3d at 1338 ("[S]ale of an

## III. Sources of Proof Are More Accessible in NDCA

The district court abused its discretion in holding that the sources-of-proof factor is neutral. It favors transfer. In considering whether accessibility of evidence favors transfer, "[t]he question is *relative* ease of access, not *absolute* ease of access." *In re TikTok*, 85 F.4th at 358 (citation omitted); *In re Juniper Networks*, 14 F.4th at 1321. Therefore, "the location of document custodians and location where documents are created and maintained" are both relevant. *In re Google LLC*, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

Sources of proof are much more easily accessible in NDCA because that is where almost all of Google's documents and source code are created and maintained. Appx147; Appx151. Again, it is undisputed that the vast majority of Google employees working on the accused functionalities are located in NDCA. Because those same employees are responsible for creating and maintaining documentation and source code, it follows that most of the sources of proof are more easily accessible in NDCA. *In re Google LLC*, 2021 WL 5292267, at *2. Google also

---

accused product offered nationwide does not give rise to a substantial interest in any single venue.").

maintains physical test terminals in NDCA that are used for product development.  Appx147.

The district court discounted the relative ease of accessing proof in NDCA solely on the ground that most evidence is stored electronically and could be accessed from WDTX.  That was legal error.  "[W]hile electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant."  *In re Juniper Networks*, 14 F.4th at 1321.  Mr. Bhattacharya may be able to access *some* evidence in WDTX, but that does not make all proof "equally accessible in either forum."  Appx009.  Employees need appropriate permissions to access documents and source code for particular aspects of a product.  Appx294.  Nothing in the record indicates Mr. Bhattacharya has access to the full range of relevant GIS documents, including those created by the many teams he is not on.  Moreover, because Mr. Bhattacharya does not work on Google Pay, there is no reason to think he can access those documents.  This Court has repeatedly held that because the key question is *relative* ease of access, it is an abuse of discretion to hold that this factor is neutral merely because a WDTX employee could be given permission to access

documents whose primary custodians reside in NDCA. *See In re Apple Inc.*, 2022 WL 1196768, at \*4 (Fed. Cir. Apr. 22, 2022); *In re Apple Inc.*, 2021 WL 5291804, at \*2 (Fed. Cir. Nov. 15, 2021). Here, the teams are overwhelmingly located in NDCA, *see* pp. 7-11, *supra*, so their documents are more easily accessible there. *See In re TikTok*, 85 F.4th at 359. In these circumstances, the sources-of-proof factor favors transfer. *In re Apple Inc.*, 2022 WL 1196768, at \*4.

That conclusion is reinforced by the fact that Google's physical test terminals, located in NDCA, also should have favored transfer. The court stated that it did not "understand if the terminals will play a role in this case." Appx009. But unrebutted testimony establishes that the terminals are used to develop and test the tap-to-pay functionality, Appx147, making them relevant to Proxense's infringement claims. While Proxense asserted that Google had not adequately explained the terminals' relevance, Appx221, Google was not required to prove precisely how the terminals would support its claim. Where, as here, evidence relates to the development of the accused products and the plaintiff has not provided "any reason[] . . . to doubt" its relevance, the defendant need not "articulate the precise way that [the] evidence

supports its claim." *In re Netflix, Inc.*, 2022 WL 167470, at *3 (Fed. Cir. Jan. 19, 2022); *accord In re Google LLC*, 58 F.4th at 1385. The court should have weighed the terminals in favor of transfer.

## IV. The District Court's Prior Experience With Some of the Asserted Patents Cannot Justify Retaining this Case in WDTX

The district court abused its discretion in concluding that judicial-economy considerations weighed against transfer based on the previous WDTX action against Samsung, which involved two of the six patents asserted against Google.

As an initial matter, the overlap between the two cases is narrow: this case involves four additional patents, and the accused technologies are entirely different. No identity-related products were at issue in *Samsung*, and the mobile-payment technology at issue there is different from Google Pay. This Court has held that when the accused products differ, there is little efficiency to gain from litigating in the same court: "it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial." *In re Samsung*, 2 F.4th at 1379-80 (citation omitted).

In all events, a district court's "prior familiarity with some of the issues, from a prior claim construction in a different case brought by" the same plaintiff, is "clearly insufficient" to outweigh other factors that support transfer. *In re Google LLC*, 2022 WL 1613192, at *4. "[J]ust because a patent is litigated in a particular forum does not mean the patent owner will necessarily have a free pass to maintain all future litigation involving that patent in that forum." *Id.* (citation omitted); *see also In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011). To hold otherwise would be to invite plaintiffs to manipulate venue by filing multiple suits in one venue in the hopes of forcing defendants to litigate there, regardless of inconvenience. *See In re NetScout Sys., Inc.*, 2021 WL 4771756, at *4-5 (Fed. Cir. Oct. 13, 2021). The concern about venue manipulation is particularly acute here, where Proxense has no connection to WDTX, but has repeatedly filed suit there.[7] Any familiarity with two of the patents that the district court gained in *Samsung* cannot outweigh the superior convenience of NDCA.

---

[7] Indeed, when Proxense filed this suit, it also filed a separate suit in WDTX against Microsoft. Microsoft has moved to transfer. The district court correctly recognized that this Court's precedent precludes weighing

**V. The Remaining Convenience Factors Confirm That WDTX Has No Connection to, Or Interest in, this Case.**

The district court correctly held that the remaining convenience factors—availability of compulsory process, court congestion, familiarity with governing law, and avoidance of conflicts of laws factors—are neutral. That confirms that WDTX lacks any connection to this suit and that the suit should be transferred to NDCA.

1. The availability of compulsory process is neutral because there are no identified third-party witnesses who are within the subpoena power of NDCA or WDTX. Proxense argued that it believes Google's relationships with third-party partners will be relevant to this case, but it did not specifically identify any such partners, let alone partners in WDTX.

2. The difficulties from court congestion are neutral. The median time to trial is not significantly different (24.3 months in WDTX and 31.8 months in NDCA). Appx186; Appx188; *see also* Appx223. Even if WDTX's pace were meaningfully faster, "it [is] a clear abuse of discretion

---

the mere co-pendency of that case against transfer. Appx010; *In re NetScout Systems*, 2021 WL 4771756, at *5.

to accord this factor any weight" when there is no need for expedition. *In re Google LLC*, 58 F.4th at 1383. Because there is no evidence that Proxense competes with Google in the market, WDTX's slightly faster dispositions have no significance here. Appx010-011; *In re Google LLC*, 58 F.4th at 1383.

3. Both NDCA and WDTX are well versed in patent law, and there is no prospect for conflicts of laws, so the last two factors are neutral. Although Proxense argued in two conclusory sentences that it was "possible" that disputes relating to its settlement with Samsung might arise, Appx223, the district court properly rejected that contention as entirely speculative. Appx012-013. Proxense did not suggest, much less substantiate, that the Samsung license cannot be interpreted by NDCA. *See In re TikTok*, 85 F.4th at 365. These factors are neutral.

## VI. Taken Together, The Convenience Factors Require That this Case Be Transferred to NDCA

NDCA is unquestionably the more convenient forum and the clear "center of gravity" of this action. *In re DISH Network LLC*, 2021 WL 4911981, at *2 (Fed. Cir. Oct. 21, 2021). The willing-witness factor—the most important factor—and local-interest factors strongly favor transfer, and the sources-of-proof factor also favors transfer. All other convenience

factors are neutral. The only factor that arguably favors retaining this case in WDTX—judicial economy—is one that this Court has held cannot outweigh the other factors when they clearly favor transfer. *See*, *e.g.*, *In re Samsung*, 2 F.4th at 1380. That is particularly so here, where the earlier suit involved a different defendant and different products, guaranteeing that the infringement issues will have little overlap with this case. Thus, "as in other recent cases in which [this Court has] granted mandamus on the issue of transfer, several of the most important factors bearing on the transfer decision strongly favor transfer, and no factor favors retaining the case in the transferor court." *In re Pandora Media, LLC*, 2021 WL 4772805, at *7 (Fed. Cir. Oct. 13, 2021).

Stepping back, this case "lack[s] any legitimate mooring to the Western District of Texas." *In re Honeywell Int'l Inc.*, 2024 WL 302397, at *3 (Fed. Cir. Jan. 26, 2024). Proxense has no connection whatsoever to the district: it is based in Oregon, far from WDTX (and closer to NDCA), and none of its witnesses are present in WDTX. The accused functionalities were not developed in WDTX, and no particular activities giving rise to the suit occurred there. The *only* relevant connection to WDTX is a single Google employee who joined Google after the accused

39

functionalities on which his team works were developed and whose role is to manage an engineering team whose other members reside nearly entirely in NDCA. This is therefore a case in which the plaintiff opted to file suit in WDTX merely because it prefers that forum—despite that district's lack of any actual connection to the suit, and despite that district's inconvenience to both parties.

Under those circumstances, the case for transfer should have been straightforward. The district court was able to come to a different conclusion only by disregarding this Court's clear precedents establishing how the convenience factors must be applied in similar circumstances; inexplicably ignoring ten witnesses with undisputedly relevant knowledge in NDCA; and, at every turn, according Mr. Bhattacharya's presence in WDTX outsized influence that was entirely unwarranted under well-settled law. Google therefore has a clear and indisputable right to a writ of mandamus directing transfer to NDCA.

## CONCLUSION

Google respectfully requests that the Court issue a writ of mandamus vacating the district court's order denying Google's motion to transfer and directing the district court to transfer this case to NDCA.

DATED: February 27, 2024    MUNGER, TOLLES & OLSON LLP

By:    /s/ Ginger D. Anders
    GINGER D. ANDERS
    MUNGER, TOLLES & OLSON LLP
    601 Massachusetts Avenue NW
    Suite 500 E
    Washington, DC 20001
    Telephone: (202) 220-1100
    Email: ginger.anders@mto.com

    EVAN MANN
    MUNGER, TOLLES & OLSON LLP
    560 Mission Street
    27th Floor
    San Francisco, CA 94105
    Telephone: (415) 512-4056
    Email: evan.mann@mto.com

    *Counsel for Google LLC*

**CERTIFICATE OF COMPLIANCE**

1.    This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1).  The body of the petition contains 7790 words, excluding the portions exempted by rule.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in New Century Schoolbook 14-point font.

DATED:  February 27, 2024    By:   */s/ Ginger D. Anders*
                                                  Ginger D. Anders

## CERTIFICATE OF SERVICE

I certify that on February 27, 2024, I caused a paper copy of this document to be sent by an express carrier to lead counsel for respondent Proxense, LLC at the following address:

David L. Hecht
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 851-6821

I further certify that I caused courtesy electronic copies of this document to be sent to each counsel above and to the following additional counsel of record for Proxense, LLC in the district court:

David L. Hecht, dhecht@hechtpartners.com
Maxim Price, mprice@hechtpartners.com
Yi Wen Wu, wwu@hechtpartners.com
Brian D. Melton, bmelton@susmangodfrey.com
Geoffrey L. Harrison, gharrison@susmangodfrey.com
Meng Xi, mxi@susmangodfrey.com
Bryce T. Barcelo, bbarcelo@susmangodfrey.com
Lear Jiang, ljiang@susmangodfrey.com

I further certify that I caused a paper copy of this document to be sent by an express carrier to the presiding district judge at the following address:

U.S. District Judge Alan Albright
800 Franklin Avenue, Room 301
Waco, Texas 76701

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: February 27, 2024     By: _____ */s/ Ginger D. Anders*_____
                                                      Ginger D. Anders